UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAMELA LESANN MARTIN,

      Plaintiff,

v.                                    Case No: 8:22-cv-1435-JSS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## ORDER

Plaintiff Pamela Lesann Martin seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits. As the Administrative Law Judge's (ALJ) decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.    Procedural Background

Plaintiff filed an application for a period of disability and disability insurance benefits on March 26, 2020. (Tr. 81, 91.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 106–32.) Plaintiff then requested an administrative hearing. (Tr. 133–34.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 38–80.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied

Plaintiff's claims for benefits. (Tr. 17–32.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 6–11.) Plaintiff then timely filed a complaint with this court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1960, claimed disability beginning on November 15, 2019. (Tr. 82, 192.) Plaintiff has a General Equivalency Diploma (GED) and past relevant work experience as a telemarketer/telephone solicitor. (Tr. 31, 208, 216.) Plaintiff alleged disability due to major depressive disorder, sleep apnea, a back problem, and arthritis of the right elbow. (Tr. 106, 108, 212.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since November 15, 2019, the alleged onset date. (Tr. 23.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spines and degenerative joint disease of the right elbow. (Tr. 23.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25.) The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to

> perform light work as defined in 20 CFR 404.1567(b) except
> [s]he can occasionally reach overhead bilaterally, and in all
> other directions frequently. The individual can frequently
> push/pull with the right upper extremity. The individual
> can occasionally climb stairs, never climb ladders, can

occasionally stoop, kneel, crouch and crawl.  The individual can have occasional exposure to extreme cold, extreme heat, to vibration and to workplace hazards.

(Tr. 26.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 26.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), however, the ALJ determined that Plaintiff could perform her past relevant work.  (Tr. 31.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 32.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA), in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court

reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff contends that the ALJ erred by (1) failing to develop a full and fair record by not ordering a consultative examination, and (2) failing to include mental limitations in the RFC. For the reasons that follow, neither of these contentions warrant reversal.

### I.    Duty to Develop the Record

It is well settled in the Eleventh Circuit that the ALJ has a duty to develop a fair and full record. *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984). However, "the

claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see Joint v. Colvin*, No. 8:14-cv-3192-T-TGW, 2016 WL 7406693, at *2 (M.D. Fla. Mar. 19, 2016). When the claimant is not represented at the hearing before the ALJ, the ALJ's "obligation to develop a full and fair record rises to a special duty . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts and to be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (internal citations omitted).

As part of their duty to develop the record, an ALJ may order a consultative examination. *See* 20 C.F.R. § 404.1519a. However, where the record contains sufficient evidence to support an informed decision, the ALJ is not required to order a consultative examination to develop the record. *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Indeed, it is only where a consultative examination is necessary for the ALJ to make a decision due to some conflict, ambiguity, or other insufficiency in the medical evidence that the regulations require an ALJ to order a consultative examination. *See* 20 C.F.R. § 404.1519a(a)(2) ("When we purchase a consultative examination, we will use the report from the consultative examination to try to resolve a conflict or ambiguity if one exists. We will also use a consultative examination to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision."); 20 C.F.R. § 404.1519a(b) ("A

consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim.").

"It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for the ALJ to make an informed decision." *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984). However, before a matter is remanded to the Commissioner for further development of the record, "there must be a showing of prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). In evaluating the necessity for a remand, the court is "guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* To establish an evidentiary gap in the record, a claimant must "identify what facts could have been submitted that would have changed the outcome." *Correa v. Colvin*, No. 8:15-cv-461-T-TGW, 2016 WL 7334642, at *4 (M.D. Fla. Mar. 18, 2016).

In this case, Plaintiff argues that the ALJ failed to develop the record by not obtaining a consultative examination. (Dkt. 14 at 7–12.) Specifically, Plaintiff argues that substantial evidence does not support the assessed RFC since it was not "guided by a medical opinion." (*Id.* at 8.) As such, Plaintiff contends that an evidentiary gap exists since the record lacked a physical opinion from any medical source and therefore, the ALJ was required to order a consultative examination. (*Id.* at 10.) Plaintiff's contentions, however, are without merit.

First, Plaintiff was represented by counsel at the hearing before the ALJ. (Tr. 20, 38, 41.) Thus, although the ALJ had a duty to develop the record, it was not the

heightened duty required of an ALJ when the claimant is unrepresented. *Graham*, 129 F.3d at 1422.

Second, Plaintiff misconstrues what evidence an ALJ may rely on to formulate an RFC. At step four of the sequential evaluation process, an ALJ must determine a claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. According to the regulations, the RFC is assessed "based on all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1). As such, in formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which they are consistent with medical evidence. 20 C.F.R. § 404.1545(a)(2), (e). It is solely the responsibility of the Commissioner to determine a claimant's RFC. *See* 20 C.F.R. § 404.1546(c); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (stating that "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors"). Thus, the regulations do not require that an ALJ secure a medical source opinion before assessing a claimant's RFC. *See Beegle v. Comm'r of Soc. Sec. Admin.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Younger v. Acting Comm'r of Soc. Sec. Admin.*, No. 3:21-cv-457-MCR, 2022 WL 4377471, at *6 (M.D. Fla. Sept. 22, 2022) ("The law does not require the ALJ to obtain a separate medical opinion from a physician upon which to base his RFC determination."); *Rodriguez v. Comm'r of Soc. Sec.*, No. 6:18-cv-503-Orl-18TBS, 2018 WL 7113871, at *2 (M.D. Fla. Dec. 27, 2018),

*report and recommendation adopted,* 2019 WL 316051 (M.D. Fla. Jan. 24, 2019) ("[T]here is no requirement that an ALJ base an RFC finding on a medical source's opinion."). Rather, as long as the ALJ's RFC determination is based on substantial evidence, the absence of a medical opinion by a medical source will not render the RFC determination invalid. *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 924 (11th Cir. 2007). Therefore, Plaintiff's argument that a "physical opinion" is required to formulate the RFC is misplaced because the lack of a medical opinion does not equate to a lack of sufficient medical evidence on which the ALJ could rely to make an informed decision. *See Drew v. Kijakazi*, No. 8:20-cv-3063-AEP, 2022 WL 4463585, at *6 (M.D. Fla. Sept. 26, 2022) (finding plaintiff's argument "that the ALJ was somehow required to obtain an opinion about his physical limitation" to assess the RFC to be without merit); *Thompson v. Colvin*, No. 1:12-cv-4021-KOB, 2014 WL 1278085, at *2–3 (N.D. Ala. Mar. 27, 2014) ("Developing a full and fair record, however, does not require an ALJ to secure a medical source opinion regarding the claimant's RFC.")

Notwithstanding, the ALJ's duty to fully develop the record may still require the ALJ to order a consultative examination, as noted above, if "necessary to make an informed decision." *Smith v. Comm'r*, 501 F. App'x. 875, 878 (11th Cir. 2012). As discussed below, the ALJ in this matter was not required to order a consultative examination, as the record was sufficiently developed.

Upon review, the court discerns no evidentiary gaps in the record before it. In reaching her decision, the ALJ extensively reviewed, compared, and analyzed Plaintiff's medical records. (Tr. 26–31.) The ALJ discussed the medical records at

length, noting Plaintiff's conditions, self-reported symptoms, mental status findings, medications, and any internal and external inconsistencies in the records.  The ALJ also considered Plaintiff's testimony in determining her severe impairments and formulating the RFC.  (Tr. 23–24, 31.)

This evidence "is clearly probative" of Plaintiff's physical and mental functioning and supports the ALJ's findings regarding the effect of Plaintiff's impairments on her ability to work.  *See Joint*, 2016 WL 7406693, at *4; *see* 20 C.F.R. § 404.1529(c)(2) (providing that objective medical evidence is used to evaluate the effect of symptoms on a claimant's ability to work).  As such, the ALJ's evaluation is supported by substantial evidence and an additional examination was not required.  *See Castle*, 557 F. App'x at 853 (concluding that a consultative examination was not required because the record contained sufficient evidence to support the ALJ's findings); *Nation v. Barnhart*, 153 F. App'x 597, 598 (11th Cir. 2005) ("The ALJ is not required to seek additional independent expert medical testimony before making a disability determination if the record is sufficient and additional expert testimony is not necessary for an informed decision."); *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (holding a consultative examination was not required where the record evidence supported the ALJ's findings).

Moreover, Plaintiff has not shown any prejudice to warrant remand due to the lack of a consultative examination.  *See Robinson*, 365 F. App'x at 999 ("[Plaintiff] has not shown that she suffered prejudice as a result of any failure of the ALJ to perform further factfinding, because there is no evidence [the] ALJ's decision would have

changed in light of any additional information."). Additionally, contrary to Plaintiff's contentions, this is not a situation where the ALJ improperly substituted her opinion for that of a physician. Rather, the ALJ's decision reflects the proper exercise of her role as "an adjudicator responsible for assessing [the claimant's] RFC." *See Castle*, 557 F. App'x at 853. As discussed earlier, the ALJ here simply performed her duty of evaluating the relevant medical and other evidence in the record. *See Mommens v. Comm'r of Soc. Sec.*, No. 2:21-cv-952-SPC-KCD, 2022 WL 18672971, at *3 (M.D. Fla. Dec. 12, 2022), *report and recommendation adopted,* 2023 WL 572822, (M.D. Fla. Jan. 27, 2023) ("In creating the RFC, the ALJ is to consider all relevant evidence, medical and otherwise."). Therefore, as the evidence of record supports the ALJ's findings, there is no prejudice to Plaintiff.

As a result, the court finds that the medical record contained sufficient evidence on which the ALJ could make an informed decision, such that the ALJ did not err by failing to order a consultative exam that included a physical assessment of Plaintiff.

## II.   Mental Limitations in the RFC

Plaintiff next argues that the ALJ erred in failing to include mental limitations in the RFC. (Dkt. 14 at 12–17.) As part of this argument, Plaintiff contends that the failure to include any mental limitations in the RFC is due to how the ALJ evaluated the opinion of Dr. Matthew Thomas, M.D. (*Id.* at 14–16.)

As an initial matter, the court finds Plaintiff's argument regarding Dr. Thomas's opinion to be without merit. Effective March 27, 2017, the Social Security

Administration updated its regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings.  We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.  When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.[1]  The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).  We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c(a).  The regulations further state that because supportability and consistency are the most important factors under consideration, the Commissioner "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision."  20 C.F.R. § 404.1520c(b)(2).[2]  "Courts

---

[1] Subparagraph (c) provides that the factors to be considered include: (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of treatment relationship; frequency of examination; purpose of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(c).

[2] "Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record."  *Welch v. Comm'r of Soc. Sec.*, No. 6:20-cv-1256-DCI, 2021 WL 5163228, at *2 (M.D. Fla. Nov. 5, 2021) (footnote omitted) (citing 20 C.F.R. § 404.1520c(c)(1)–(2)).

have found that '[o]ther than articulating [her] consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how [she] considered any other factor in determining persuasiveness.'" *Bell v. Comm'r of Soc. Sec.*, No. 6:20-cv-1923-DCI, 2021 WL 5163222, at *2 (M.D. Fla. Nov. 5, 2021) (quoting *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019)); *see also Delaney v. Comm'r of Soc. Sec.*, No. 6:20-cv-2398-DCI, 2022 WL 61178, at *2 (M.D. Fla. Jan. 6, 2022) (noting that the ALJ may, but is not required to, explain how he or she considered the remaining factors besides supportability and consistency).

Dr. Thomas, a licensed psychiatrist, treated Plaintiff from 2015 to 2020.  (Tr. 283, 383.)  In May 2020, Giselle Bolt, APRN, filled out a treating source statement on behalf of Plaintiff.  (Tr. 383–87.)  While Nurse Bolt filled out the form, Dr. Thomas's signature appears at the end of the statement.  (Tr. 387.)  According to the treating source statement, Plaintiff had variable limitations on all functional activities.  (Tr. 385–86.)

The ALJ considered the treating source statement and found it unpersuasive. Specifically, the ALJ stated:

> I find unpersuasive the treating source statement provided
> by Matthew Thomas, M.D. (Ex. 5F), because from 2015
> through 2019 the claimant was engaged in working setting
> appointments and doing other valuable work for her
> husband's business.  These claims of markedly limited
> memory, markedly limited concentration, persistence and
> pace, and being off task more than 25% are not consistent
> with her work, nor with the notes from the relevant
> treatment period that do not discuss this.  The claimant

> continues to work part time doing the same tasks for her
> husband's business as of the time of this decision. I also
> note that there are no treatment notes after this opinion.
> For these reasons, I find this treating source statement
> unpersuasive.

(Tr. 30.) First, the court notes that despite the fact that Nurse Bolt filled out the treating

source statement, the ALJ attributed the opinions in the statement to Dr. Thomas.

Second, the court finds that the ALJ's treatment of the opinions aligns with the

requirements set forth in 20 C.F.R. § 404.1520c(a). While the ALJ did not use the

terms "supportability" and "consistency," it is clear the ALJ considered both factors

in evaluating the treating source statement. *See Lewno v. Kijakazi*, No. 8:21-cv-1334-

SPF, 2022 WL 3999282, at *5 (M.D. Fla. Sept. 1, 2022) ("Use of these words

[supportability or consistency] is not required, however, as long as the ALJ's findings

were ultimately based on these factors.") (citations omitted); *see also Thaxton v. Kijakazi*,

No. 1:20-cv-616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) (stating that

"the ALJ need not use any magic words in discussing whether a medical opinion is

supported by evidence from the medical source himself and whether the opinion is

consistent with other evidence of record").

First, the ALJ considered the supportability factor. In regard to Dr. Thomas's

opinion, the ALJ found that it was neither supported by treatment notes after the

opinion, nor with the notes from the relevant treatment period. (Tr. 30.) In addition

to the supportability factor, the ALJ considered the consistency factor when evaluating

Dr. Thomas's opinions. The ALJ noted that Plaintiff's functional limitations

according to the treatment statement were not consistent with the work Plaintiff was

doing between 2015–2019 for her husband's business, which the ALJ also discussed as part of his RFC determination.  (Tr. 29–30, 280, 339, 341, 377, 389, 421, 423, 425.)  *See Thaxton*, 2022 WL 983156, at *8 ("An ALJ may refer to evidence discussed elsewhere in the decision when evaluating medical opinions or prior administrative medical findings."); *see also Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses").  Thus, the ALJ properly evaluated Dr. Thomas's opinions according to the regulations.

As to Plaintiff's broader argument that the ALJ erred by failing to include mental limitations in the RFC, the court finds that contention to also be without merit.  As noted above, the RFC is a "medical assessment of what the claimant can do in a work setting despite any mental, physical, or environmental limitations caused by the claimant's impairments or related symptoms."  *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 689 (11th Cir. 2013); *see Mills v. Berryhill*, 824 F. App'x 894, 899 (11th Cir. 2020); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  In formulating the RFC, the ALJ is not required to refer to every piece of evidence, provided that the ALJ provides sufficient reasoning for the reviewing court to evaluate whether the ALJ considered the claimant's medical condition as a whole.  *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) ("So long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record.").

When a claimant presents a "colorable claim of mental impairment, the ALJ must complete a Psychiatric Review Technique Form (PRTF) or incorporate the PRTF technique into his analysis at steps two and three. *Moore*, 405 F.3d at 1213. This technique requires the ALJ to examine the claimant's functional limitation in four areas: (1) ability to understand, remember, or apply information; (2) interaction with others; (3) concentration, persistence, and pace; and (4) ability to adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ must rate the claimant's degree of functional limitation in each area on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520(a)(c)(4).

The mental assessment is also used later in the sequential analysis, including the RFC assessment at step four and consideration of the VE's testimony at step five. *Brackins v. Saul*, No. 1:20-cv-22/EMT, 2021 WL 1061166, at *5 (N.D. Fla. Mar. 18, 2021); *see Buckwalter*, 5 F.4th at 1325. Where, as here, the ALJ finds a non-severe mental impairment at step two of the analysis, that impairment remains part of the ALJ's RFC analysis. The ALJ must consider the severe impairments in combination with the non-severe impairments when determining the RFC. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). Additionally, the hypothetical questions posed to the VE must include all of the claimant's impairments supported by the record, severe and non-severe. *Ingram*, 496 F.3d at 1270. However, the RFC and hypothetical question do not need to include limitations unsupported by the record. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."); *see*

*Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007); *Fivecoat v. Berryhill*, No. 8:18-cv-1180-T-30AAS, 2019 WL 3290997, at *3 (M.D. Fla. July 3, 2019), *report and recommendation adopted,* 2019 WL 3290286 (M.D. Fla. July 22, 2019).

The ALJ found that Plaintiff has a mild limitation in each of the four functional areas.  (Tr. 23–24.)   Additionally, the ALJ determined that Plaintiff's medically determinable impairments of ADHD, depression, bipolar disorder, anxiety disorder, and impulse control disorder, considered singly and in combination, "do not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."  (Tr. 23.)  The ALJ then considered these non-severe mental impairments in the RFC analysis, but ultimately determined that the evidence of record did not warrant additional limitations in the RFC.  (Tr. 23, 24, 26, 29, 30.)  Substantial evidence supports this finding.  For example, the ALJ discussed Plaintiff's long work history while receiving treatment and noted several times how she continued to work part time for her husband's business.  (Tr. 30, 280, 339, 341, 377, 389, 421, 423, 425.)   Moreover, the ALJ addressed Plaintiff's mental health records, which reflected Plaintiff's self-reported claims of improvement and further, that at the time of the hearing, she was not in therapy or taking any medications related to her mental health.   (Tr. 29, 68, 69, 280, 281, 339, 341, 343, 377.)  Other records further indicate Plaintiff had a euthymic mood and appeared cooperative with an appropriate affect.  (Tr. 374, 376, 377, 401, 402, 421, 423, 425, 427, 429, 431.)  As such, the ALJ's mental RFC determination provides an articulated linkage to the medical evidence of record and therefore, the court finds that the ALJ did not err in

failing to include a mental limitation in the RFC or the hypothetical posed to the VE. *See, e.g.*, *Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) ("[An ALJ's] decision [must] provide a meaningful basis upon which we can review [a plaintiff's] case").

In sum, contrary to Plaintiff's contention, the ALJ was not required to include a mental limitation in the RFC simply because he identified "mild" mental limitations in the PRT assessment. *Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-cv-782-EJK, 2022 WL 2901218, at *2 (M.D. Fla. July 22, 2022) (rejecting Plaintiff's assertion that the ALJ failed to include a mental limitation in the RFC assessment where the ALJ correctly addressed Plaintiff's "mild" limitations in the analysis); *see also Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979–80 (11th Cir. 2016) (holding that the ALJ did not err by omitting mental limitations based on claimant's depression where the ALJ took this impairment into account and "found that Williams had only 'mild' limitations based on this impairment"); *Sprague v. Colvin*, No. 8:13-cv-576-T-TGW, 2014 WL 2579629, at *6–7 (M.D. Fla. June 9, 2014) (holding that the RFC was supported by substantial evidence when it contained no functional limitations based on a mental impairment— even though the ALJ identified mild limitations in the PRT criteria—because non-severe limitations do not significantly interfere with the ability to work). The ALJ's decision reflects his thorough consideration of Plaintiff's medical condition as a whole, including her severe and non-severe impairments, and all evidence of record. The ALJ's findings are well supported by the record evidence and shall not be disturbed. *See Buckwalter*, 5 F.4th at 1326 ("The ALJ's decision shows that he considered the report in its entirety and Buckwalter's medical condition as a whole. We affirm.").

## CONCLUSION

The Eleventh Circuit has explained that "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors." *Robinson*, 365 F. App'x at 999; *see Denomme*, 518 F. App'x at 877–78. Where, as here, the ALJ's findings are supported by substantial evidence in the record, the ALJ properly "carried out his regulatory role as an adjudicator responsible for assessing [Plaintiff's] RFC." *Castle*, 557 F. App'x at 853–54. As noted above, the court's scope of review is limited; the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ. *Bloodsworth*, 703 F.2d at 1239. Thus, the court declines to disturb the decision of the ALJ. *Robinson*, 365 F. App'x at 999; *Doughty*, 245 F.3d at 1281.

Accordingly, after due consideration and for the foregoing reasons:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on May 25, 2023.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record